IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-03101-STV

NINTENDO OF AMERICA INC.,

    Plaintiff,

v.

JESSE KEIGHIN, individually,

    Defendant.

### PLAINTIFF'S MOTION FOR SUBSTITUTED SERVICE

Plaintiff Nintendo of America Inc. ("Nintendo," or "Plaintiff"), by and through its counsel, hereby submits this Motion for Substituted Service. Nintendo has brought this action against a District resident—Jesse Keighin—who is a recidivist infringer of Nintendo's intellectual property rights, as detailed in Nintendo's Complaint, Dkt. 1. Nintendo has gone to great effort and exercised extreme due diligence in seeking to serve Mr. Keighin, attempting service at five different addresses he is associated with in public records—including one that *Defendant himself provided to Nintendo as recently as October 17, 2024*. Nintendo also emailed Mr. Keighin the Summons and Complaint and a waiver of service form, and requested that he waive service. Nintendo sent the Summons and Complaint—as well as an earlier email about potential spoliation—to a valid email address that Mr. Keighin has *used to communicate with Nintendo* as recently as October 24, 2024, and Mr. Keighin has posted online about both of Nintendo's emails, in one instance within minutes of receiving it. Notwithstanding these efforts, Nintendo has been unable to personally

1

serve the Defendant with the Summons and Complaint. Mr. Keighin has confirmed publicly, however, that he is aware of this lawsuit, including to a local reporter with 9NEWS in Castle Rock. His online posts, as described below, boast about his evasion of service and his purported plan to evade liability through default and bankruptcy, and are replete with threats and hostile language toward outside counsel. Since Mr. Keighin already has actual notice of this suit, the substituted service contemplated herein is appropriate and warranted. Nintendo's motion should be granted.

## BACKGROUND

Defendant, Jesse Keighin, is an individual who has unlawfully streamed pirated copies of Nintendo's copyrighted video games on at least twelve different online platforms—including YouTube, Twitch, and Loco under the username (pseudonym) "Every Game Guru"—over *fifty times*. Dkt. 1, Complaint ("Compl.") ¶¶ 2–3. This included streaming games before they had even been released to the public ("prelease content"). Before resorting to litigation, Nintendo issued dozens of takedown notices under the Digital Millenium Copyright Act ("DMCA")[1] for unlawful prerelease content uploaded by Defendant, resulting in that content being removed and Defendant's accounts being disabled under several of those platforms' policies' barring repeat infringers, such as on YouTube and Twitch. *Id.* ¶ 3. As discussed in Nintendo's Complaint, Defendant has also distributed links to online repositories of pirated copies of Nintendo's games

---

[1] 17 U.S.C. § 512, commonly known as the DMCA, sets forth a notice-and-takedown process whereby a copyright holder can notify a platform hosting content at the direction of its users of a user's infringing content, and the platform must take down the content. If the user believes the content is not infringing, they may serve a 'counternotice' stating under penalty of perjury that they believe the content not to be infringing, among other requirements, such as providing in a signed writing a valid address at which the user may be served in the event the copyright holder chooses to bring a lawsuit over the content, and providing a valid email address. 17 U.S.C. § 512.

2

and to illegal circumvention software such as emulators, which enable the play of pirated Nintendo games by circumventing Nintendo's technological protection measures. *Id*. ¶¶ 70–73.

Nintendo has asserted claims against Defendant for direct copyright infringement in the form of unauthorized public performances and reproductions of protected works, as well as for contributory infringement, under 17 U.S.C. §§ 106(1), 106(4), and 501(a); for circumvention of technological measures under 17 U.S.C. § 1201(a)(1); and for trafficking in circumvention technology under 17 U.S.C. §§ 1201(a)(2), (b)(1). *Id*. ¶¶ 74–129.

Plaintiff filed the underlying Complaint in this District and requested issuance of a summons on November 6, 2024, which was issued the same day.

I.   **<u>Nintendo's Service Attempts</u>**

Following the filing of the Complaint and issuance of the Summons, Nintendo has attempted personal service at five addresses associated with Defendant—including one the Defendant provided to Nintendo—a total of five times. Nintendo has also emailed a copy of the Summons and Complaint to an email address confirmed to be Defendant's.

<u>First</u>, Nintendo attempted to serve Defendant at an address on E. Batavia Dr. in Aurora, CO[2] on November 8, 2024, two days after the filing of the Complaint. This address was identified by Defendant as his own in five different DMCA counternotices he submitted in response to Nintendo's DMCA takedown notices in January 2023, November 2023, and, most recently, October 2024. Mitchell Decl. ¶¶ 3 & 5.  The most recent of these, dated twenty days before this lawsuit was filed, is shown in the below screenshot. *Id*. ¶ 5. Nintendo also conducted a public

---

[2] To protect the privacy of nonparties, Nintendo is omitting the street and apartment numbers of the addresses of its unsuccessful service attempts in its publicly-filed motion. Should the Court so request, Nintendo can provide the full addresses under seal or publicly.

3

records search for Defendant, and the Batavia Dr. address was listed as Defendant's current address. *Id.* ¶ 7.



Nintendo's process server attempted the Batavia address twice, on November 8 and November 12, 2024. There, Nintendo's process server spoke once with Defendant's grandmother, Mary Twist, and once with a woman who the server believes to be his sister, Brianna Keighin, who both claimed Defendant no longer lived there. Mitchell Decl. ¶ 13 & Exs. A & B.

Second, Nintendo attempted service at two addresses that its public records searches indicated Defendant had resided at within the last two years: one on Kestrel Place in Castle Rock, CO on November 13; and another on S Marion Street in Englewood, CO on November 13. Mitchell Decl. ¶¶ 14–15 & Exs. C & D. The occupants of both addresses indicated that they did not know Defendant and that he did not reside there. *Id.*

Third, Nintendo attempted service at an address on W. 107th Ave. in Westminster, CO on November 19, an address that a public records search by Nintendo's process server indicated might be associated with a possible alias of Defendant's, Jesse Weber. *Id.* ¶¶ 11, 16 & Ex. E. The resident indicated that she lived there with her husband Jesse Weber, but Jesse Keighin was unknown. *Id.*

4

Fourth, on November 20, 2024, the undersigned transmitted to Defendant via email (to the address "everygameguru@gmail.com") a copy of the Summons and Complaint, and asked Defendant whether he would waive service, attaching a waiver of service form. Mitchell Decl. ¶ 17 & Ex. G.³ Defendant identified his email address as "everygameguru@gmail.com" in his five DMCA counternotices, including most recently on October 17, 2024 (see screenshot above at 3). *Id*. ¶ 5. Defendant has also previously corresponded with certain of Nintendo's outside counsel using this email address, and more recently Defendant sent multiple emails directly to Nintendo using this email address as recently as October 24, 2024, as shown in the below screenshot. Mitchell Decl. ¶ 6. Defendant did not respond to the email containing the Summons and Complaint, but as described below, reacted to it publicly. *Id*. ¶ 18; *infra* at 11–12.



Fifth, through social media posts by Defendant, Nintendo identified Defendant's wife/partner as Melina Foy. Mitchell Decl. ¶ 8.⁴ A public records search for Foy corroborated this conclusion, as the records indicated Foy previously resided at one of Defendant's prior residences at the same time over several years. *Id*. ¶ 9. Nintendo's process server had already attempted that shared prior address (on Kestrel Place), but the public records indicated Foy now lived at a different address on Mercantile Street, also in Castle Rock, CO. *Id*. Because Defendant's streams suggested that he currently resides with his partner, Nintendo attempted service at Foy's address

---

³ The undersigned had also emailed Defendant on November 8, 2024, as discussed below.
⁴ Defendant's posts refer to his "wife" but Nintendo's public records searches did not indicate Defendant is legally married.

on Mercantile Street in Castle Rock, CO on November 23. *Id.* ¶ 19 & Ex. F. The server spoke with Foy who stated that Defendant did not live there, and that she had not seen Defendant in 2-3 months. *Id.*[5]

It also appears likely that Defendant is aware of Nintendo's service attempts and is evading service. For example, Defendant expects things to "die down soon" and boasted that he has 10 addresses, as shown in the below screenshots. Mitchell Decl. ¶ 20.



---

[5] Foy's statements to the process server are inconsistent with Keighin's statements on his streams, so Keighin may be enlisting family members to help him evade service.



Nintendo understands that Defendant either works from home or is unemployed and so is not aware of an additional workplace address where he could be served. Mitchell Decl. ¶ 8.

II. **Keighin Has Actual Knowledge of This Suit**

Defendant has demonstrated through multiple social media posts and comments to a reporter that he has actual knowledge of this lawsuit and has received the Summons and Complaint.

On November 7, 2024, a local reporter with station 9NEWS in Colorado reached out to Defendant about the lawsuit in YouTube chat during his live stream, as shown in the below screenshot. Defendant responded verbally to the reporter and ultimately ended the stream because "…if Nintendo is suing me I gotta get ready for that…" Mitchell Decl. ¶¶ 21–22.



7

On November 11, 2024, the 9NEWS reporter ran the story about the lawsuit and their conversation with Mr. Keighin. [6] Defendant declined a full interview but stated that he "still ha[d]n't been served with the lawsuit" and that his "plan [wa]s to file for bankruptcy and/or let them get a default judgment to avoid this setting any precedent for emulation, streaming, etc."

[Screenshot of 9NEWS article titled "Castle Rock man sued by Nintendo, accused of pirating, sharing unreleased Nintendo games to followers" with subtitle "Nintendo accuses a 38-year-old man in Castle Rock of pirating and sharing unreleased Nintendo games to thousands of his followers." Video player shows caption: "I still haven't been served with the lawsuit, so I don't think it's smart to do any interviews, but my plan is to file for bankruptcy and/or let them get a default judgement to avoid this setting any precedent for emulation, streaming, etc."]

Shortly after the 9NEWS reporter reached out to Defendant on November 7, Defendant began removing a substantial amount of his online posts relevant to this suit—including posts specifically referenced in Nintendo's Complaint. Mitchell Decl. ¶ 23. On November 8, 2024, the undersigned emailed Defendant to remind him of his obligation to preserve relevant documents. *Id.* ¶ 24 & Ex. H. Eleven minutes later, Defendant publicly posted on his Facebook page, referring

---

[6] *See* Jeremy Jojola, *Castle Rock man sued by Nintendo, accused of pirating, sharing unreleased Nintendo games to followers*, 9NEWS (Nov. 11, 2024), https://www.9news.com/article/news/local/nintendo-sues-colorado-streamer-unreleased-games-violations/73-f700a1a3-d5ff-4ab0-9571-970b616fc8c7.

to Nintendo's outside counsel, who sent the email: "Bitch, ask yourself, you REALLY think I give a fuck?"  as seen in the screenshot below. *Id.* ¶ 25.



On November 9, 2024, a friend of Defendant posted to Facebook about the lawsuit, tagging Defendant, and stating that Defendant "said he should show up to court dressed as Mario" and that Defendant getting named in the suit was "legendary."  Mitchell Decl. ¶ 26.



9

On November 12, 2024, Defendant Keighin at least twice publicly posted on the platform X, formerly known as Twitter, of his plans for evading the suit by filing for bankruptcy, as shown below. Mitchell Decl. ¶ 27.



10

On November 13, 2024, Defendant responded to a post on Facebook about the lawsuit, commenting that "Nintendo won't get 💩" and bragging that he will "go down in video game history" because of the lawsuit. Mitchell Decl. ¶ 28.



Finally, on November 20, 2024, after Nintendo's outside counsel emailed Mr. Keighin the Summons and Complaint requesting he waive service and attaching the waiver form, he posted on Facebook, threating her: "Think I'm your husband slut? Talk to me like you talk to him. I'll fuck you up[.]" Mitchell Decl. ¶ 29. The next day he posted, seemingly acknowledging his evasion of service: "Should have done more research on me[.] You might run a corporation[.] I run the streets[.]":

11





* * *

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 4, a plaintiff may serve a defendant pursuant to the law of the state in which the district court is located. Fed. R. Civ. P. 4(e).

Colorado law provides for personal service as a default. Colo. R. Civ. P. ("Rule") 4(e). If personal service cannot be effected, a party may move for substituted service. Colo. R. Civ. P. 4(f). Rule 4(f) provides:

> The motion [for substituted service] shall state (1) the efforts made to obtain personal service and the reason why personal service could not be obtained; (2) the identity of the person to whom the party wishes to deliver the process; and (3) the address, or the last known address of the workplace and residence, if known, of the party upon whom service is to be effected. If the court is satisfied that due diligence has been used to attempt personal service [], that further attempts to obtain [personal] service [] would be to no avail, and that the person to whom delivery of process is appropriate under the circumstances and reasonably calculated to give actual notice to the party upon whom service is to be effective, it shall: (1) authorize delivery to be made to the person deemed appropriate for service, and (2) order the process to be mailed to the address(es) of the party to be served by substituted service, as set forth in the motion, on or before the date of delivery.

Colo. R. Civ. P. 4(f).

"'Due diligence' is commonly understood as 'the diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation.'" *Penn-Star Ins. Co. v. Business Futures, Inc. et al.*, No. 21-cv-01256-RM-NYW, 2021 WL 5071822, at *4 (D. Colo. Sept. 14, 2021) (quoting *Owens v. Tergeson*, 363 P.3d 826, 835 (Colo. App. 2015)). The Colorado Court of Appeals has added that due diligence requires that a plaintiff "follow up on possessed or reasonably available information or resources" such as public records. *Owens*, 363 P.3d at 835.

## ARGUMENT

Nintendo clearly meets the standard under Colo. R. Civ. P. 4(f) and its motion for substituted service should be granted.

First, Nintendo exercised due diligence. Colo. R. Civ. P. 4(f). Nintendo attempted to personally serve Defendant at five different physical addresses, and conducted public records searches of him and his known family members to identify likely addresses for service. *Supra* at 3–6. As discussed above, these attempts included service at an address that Defendant affirmatively represented was his own in a signed DMCA counternotice just twenty days before this lawsuit was filed and twenty-two days before service was attempted on that address, as well as at addresses of his and his confirmed relatives in the public record. *Id.* Nintendo also emailed a copy of the Summons and Complaint to a confirmed email address—one that Defendant used to communicate with Nintendo as recently as October 24, 2024. *Supra* at 5.

Courts in this District regularly find due diligence in similar circumstances. *See, e.g.*, *Penn-Star*, 2021 WL 5071822, at *4 (finding due diligence after attempting service on four different addresses a total of seven times); *Matthews v. Candie*, No. 20- cv-00139-PAB-NYW, 2020 WL

13

3487850, at *3 (D. Colo. June 26, 2020) (finding due diligence where plaintiff attempted to serve defendant three times at three different addresses and performed various searches for defendant and its owner to no avail); *Malone v. Highway Star Logistics, Inc.*, No. 08-cv-01534-RPM-KLM, 2009 WL 2139857, at *2 (D. Colo. July 13, 2009) (finding due diligence where personal service was attempted at five different addresses); *Allen v. The Pinery, LLC*, 2017 WL 3492872 (D. Colo. Aug. 15, 2017) (finding due diligence as to four service attempts at three locations: a residence, mailbox center, and defendant's church).

Second, further attempts to obtain personal service would be futile. Colo. R. Civ. P. 4(f). As discussed, of the five addresses attempted, Nintendo has attempted service at an address that Defendant himself has represented he resided at just twenty-two days before the service attempt. *Supra* at 3–4. Nintendo has exhausted its public records searches for Defendant's addresses, and even attempted service at an address it was able to determine was his partner's via a combination of open source research into Defendant's social media posts and additional public records searches for his partner. *Supra* at 5–6. Defendant is evading service and may be asking his family members to assist with his evasion. *Supra* at 6 & n.5. There is concrete evidence that Defendant is aware of this litigation and has received the undersigned's emails about this case, one of which included a copy of the Summons and Complaint, and Defendant has deliberately not responded to that communication. *Supra* at 7–12. Since Defendant appears to be evading service and liability more broadly, further attempts to obtain personal service would clearly be futile.

Third, the substituted persons Nintendo proposes are appropriate under the circumstances and reasonably calculated to give actual notice. Most importantly, as discussed above, Defendant already has actual notice of this litigation. *Supra* at 7–12. Therefore, *any* substituted service would

14

be reasonably calculated to give actual notice because Defendant has already received notice. Nintendo proposes to mail the Summons and Complaint to Defendant's partner, Melina Foy, and grandmother, Mary Twist, with whom Nintendo's servers have already spoken and who have indicated they know Defendant. Nintendo also proposes to mail process to Defendant's mother, Tracy Harsch, who is likely to be in touch with Defendant, and whose identity and address Nintendo has identified from public records. All three are local and live in Castle Rock, CO or Aurora, CO.

* * *

Because Nintendo meets the standard for substituted service under Rule 4(f), its motion should be granted.

## CONCLUSION

WHEREFORE, Plaintiff Nintendo of America Inc. respectfully requests that the Court grant this motion and authorize service on Defendant:

1. By mailing process to his partner, Melina Foy at Mercantile St., Castle Rock, CO 80109;

2. By mailing process to his grandmother, Mary Twist, at E. Batavia Dr., Aurora, CO 80011; and

3. By mailing process to his mother, Tracy Harsch, at S. Zeno Way, Aurora, CO 80017.

DATED this 13th day of December, 2024.

    Respectfully submitted,

    **JENNER & BLOCK LLP**

    */s/ Alison I. Stein*
    Alison I. Stein (N.Y. Bar. No. 4787230)*
    Cayman C. Mitchell (N.Y. Bar No. 5978812)*
    1155 Avenue of the Americas
    New York, NY 10036
    Telephone: (212) 891-1600
    Facsimile: (212) 891-1699
    astein@jenner.com
    cmitchell@jenner.com

    Gail H. Morse (Colorado Bar No. 023813)*
    353 N. Clark Street
    Chicago, IL 60654
    Telephone: (312) 222-9350
    Facsimile: (312) 527-0484
    gmorse@jenner.com

    *Admitted in D. Colorado

    *Attorneys for Plaintiff Nintendo of America Inc.*